02-10-331-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00331-CR

 

 


 
 
 Jefferson Jackson Jarvis, III
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

----------

 

FROM THE 235th
District Court OF Cooke COUNTY

----------

 

OPINION

 

----------

 

          Appellant
Jefferson Jackson Jarvis, III appeals his sixty-year sentence imposed after he
pleaded guilty to aggravated sexual assault of a child, enhanced by a prior
felony.  In two issues, he contends that he is entitled to a new punishment
hearing because the trial court sentenced him without specifically asking if he
had any legal reason why sentence should not be pronounced.  We affirm.

          Appellant
waived a jury and entered an open plea of guilty to sexually assaulting C.C., his
brother’s twelve-year-old step-daughter.  At the punishment hearing, the State
called C.C., who testified in detail about the offense, a friend of C.C.’s, who
described C.C.’s outcry on the day after, and the sexual assault nurse examiner,
who testified that she collected samples of biological material from C.C. that
was submitted for DNA analysis and that she found trauma to the child’s sexual
organ consistent with penetration.  In addition, the parties stipulated that
DNA testing had confirmed that Appellant’s DNA was found in C.C.’s vagina, in
her navel, and on her panties.

          The
defense called members of Appellant’s family, who testified that they did not
believe that he had committed the offense and that C.C. was untruthful. 
Appellant also testified for the limited purpose of establishing that he had
chosen to waive a jury trial and enter an open plea before the trial court, and
that he had also chosen not to testify in his own defense.  He then called his
brother, who testified that Appellant was staying with him after he got out of
prison, that their grandfather died just before the offense, and that because
Appellant had been having trouble sleeping, he had given Appellant some pills.

          Appellant’s
attorney argued that the offense was an isolated “crime of opportunity,” and
that the trial court should consider Appellant’s grandfather’s recent passing
and Appellant’s emotional state in mitigation.

          After
the State’s closing argument, the record shows the following:

          THE
COURT:   Okay.  All right.  It’s going to be the Court’s decision that your
punishment is assessed at 60 years confinement in the Institutional Division of
the Department of Criminal Justice.

 

          Can
y’all fix me a judgment and sentence --

          MS.
WARDER [for the State]:  Yes, sir.

          THE
COURT:  -- so we can go ahead and do the --

          MR.
HENDRICK [for Appellant]:  I’m sorry, Judge.  Was that 6-0, 60?

 

          THE
COURT:  Yes, sir.

          MR.
HENDRICK:  Okay.  That’s fine.  My -- I just want to be sure.

          The
trial court then sentenced Appellant and explained his right to appeal.  Appellant’s
attorney informed the court that Appellant wished to appeal and suggested that
the court appoint a new lawyer for that purpose.  After the trial court
instructed counsel to prepare a notice of appeal, the record shows the
following:

          THE
COURT: Anything else?

          MR.
HENDRICK:  Do we have that certificate of appeal form that the --

 

          THE
COURT:  I signed it when he pled guilty Thursday.

          MR.
HENDRICK:  Oh, okay.

          THE
COURT:  There you are.

          MR.
HENDRICK:  All right.

          THE COURT: 
He didn’t sign it but I did and you did, so -- and he probably needs to sign my
copy that goes --

 

          MR.
HENDRICK:  Oh.  That’s all right.  I’ve already signed it.  Well, that’s all
right.

 

          THE
COURT:   He hasn’t.

          MR.
HENDRICK:  He hasn’t.  We’ll get him to sign it.

          (Pause
in proceedings.)

          THE
COURT:  All right.  Anything further then?

          MR.
HENDRICK:  Nothing further, Judge.

          THE
COURT:  We’re in recess.

          Appellant
contends that because the trial court did not ask him if he had anything to say
before imposing sentence, the trial court violated Appellant’s common-law right
to allocution prior to sentencing as well as the provisions of code of criminal
procedure article 42.07.  Appellant failed, however, to bring either of these
issues before the trial court by a proper objection or motion; therefore, he has
failed to preserve them for our review.[1]  Tex. R. App. P.
33.1(a)(1); see Tenon v. State, 563 S.W.2d 622, 623–24 (Tex. Crim. App.
1978) (holding that nothing was preserved for review when appellant failed to
object to the trial court’s failure to follow article 42.07); McClintick
v. State,  508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (holding that the
appellant’s failure to raise his contention that the trial court violated his
“common-law right of allocution” before the trial court preserved nothing for
review).

          Although
Appellant acknowledges the holdings in Tenon and McClintick, he
seems to argue that his procedural default should be overlooked because the
trial court denied him his right to make “a final plea for mercy and
mitigation.”  As the State points out, however, Appellant was given the
opportunity to testify at punishment and testified that he chose not to take
the stand in his own defense or in mitigation of punishment.  Further, he
presented witnesses who testified to facts that they believed should have
mitigated the punishment the trial court assessed.  Finally, Appellant’s
attorney argued in detail why he believed that the circumstances surrounding
the offense warranted mitigation and mercy.

          We
decline Appellant’s invitation to suspend the rules of error preservation or
otherwise ignore his failure to observe them.  Accordingly, we overrule both of
Appellant’s issues and affirm the judgment of the trial court.

 

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and GABRIEL, JJ.

 

DAUPHINOT,
J., filed a concurring and dissenting opinion.

 

PUBLISH

 

DELIVERED:  October 20, 2011


 
 
 
 
 
 


 


 
 
 
 
 
 
 
 
 
 
 


 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00331-CR

 

 


 
 
 Jefferson Jackson Jarvis, III
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 235th
District Court OF Cooke COUNTY

----------

DISSENTING
AND CONCURRING OPINION

----------

The
conscientious majority is absolutely correct.  A trial court has a duty to give
a defendant the opportunity for allocution under article 42.07 of the code of
criminal procedure.[2]  As I have stated
previously,

This
portion of a criminal trial is often referred to as the allocution portion of
the trial.  Allocution is the common law right of a defendant in a criminal
trial, including a trial for criminal contempt, to “present his personal plea
to the Court in mitigation of punishment before sentence is imposed.”  Although
article 42.07 of the code of criminal procedure prohibits imposition of
sentence only on the grounds of prior pardon, incompetence to stand trial, or
mistaken identity, it still grants a defendant the opportunity to speak and to
lodge any objection to the sentence before it is pronounced.  In interpreting
article 42.07 as permitting a defendant’s common law right of allocution, we
should look to the Texas Court of Criminal Appeals’s instruction regarding the
effect of a statute on common law rights:

It
is well-established that, ordinarily, a statute must be interpreted according
to its plain meaning, no more and no less.  And, it is equally well-established
that a statute must not be interpreted as abrogating a principle of the common
law unless such overruling is clearly indicated, either by the express terms of
the statute or by necessary implication from the language used.  This second
canon is based on the reasonable supposition that if the Legislature intended
to overrule a principle of the common law, then it would have made its intent
clear.

In
his concurring opinion in Breazeale v. State, Judge Clinton discussed
various procedural means available to contest an act or finding in the trial
court:

The
trial court having found that each appellant waived his right to trial by jury,
a plethora of procedural means was readily available to contest that finding in
the forum of the trial court.  A motion for new trial that the court “has
committed [a] material error calculated to injure the rights of defendant” is a
solid ground under Article 40.03 and, if supported by the showing appellant now
alleges to be the case, granting a new trial would have placed the cause in the
same position as before any trial had been held.  A motion in arrest of
judgment suggesting that “judgment has not been legally rendered against him”
would lie under Article 41.01 and related provisions of Chapter Forty One. 
More informally, at allocution under 42.07, an accused could make it known that
he had not properly waived his right to trial by jury pursuant to Article
1.13.  Thereafter, a formal bill of exception to make the record disclose any
event or occurrence relevant to the issue of waiver was available under Article
40.09, § 6(a).  Even an objection to the record in accordance with Article
40.09, § 7, would have it “speak the truth” about any alleged failure to
follow Article 1.13.

Glaringly
absent is any absolute requirement that a defendant object to an empty bench or
file a motion for new trial in order to preserve his complaint.[3]

Where
I part ways with the majority is in its holding of waiver.  The trial court
must allow a defendant allocution, and it is odd to require a defendant to
object to an empty bench.  Nor is there any justification for criminal law to
require a defendant to file a motion for new trial in order to preserve his
right to allocution.

In
the case now before this court, although the trial court did not specifically
inquire if there was any reason sentence should not be imposed, I would hold
that, under the limited facts presented in this record, the trial court
provided the opportunity for allocution required by article 42.07.  The trial court
announced its intent to sentence Appellant to sixty years’ confinement.  Trial
counsel responded, “Okay.  That’s fine.”  After that exchange, the trial court
asked if there was “[a]nything else.”  Counsel then asked about the certificate
of appeal form.  After discussing the certificate, the trial court asked again,
“Anything further then?”  Counsel replied, “Nothing further, Judge.”

The
majority appears to suggest that Appellant himself could have spoken up and
demanded the right that article 42.07 guarantees.  But that argument is not
realistic.  Despite the Texas Constitution’s guarantee that “[i]n all criminal
prosecutions the accused shall have . . . the right of being heard by
himself or counsel, or both . . . ,”[4] courts repeatedly deny the
accused this right, holding that a defendant is not entitled to “hybrid
representation.”[5] 
The defendant himself can make no objection that will preserve any complaint if
that defendant is represented by counsel who either does not realize there is
an objectionable issue or does not want to offend the trial court by objecting.

In
this case, however, there is no indication that Appellant attempted to inform
the trial court personally that he wanted to invoke his right to allocution
that article 42.07 guarantees.  I would hold that, although the trial court’s
inquiries were not precisely those required by article 42.07, and using the
language set out by the statute would have been preferable, the trial court’s
inquiries whether there was anything else the defense wanted addressed provided
sufficient compliance with article 42.07.

I
would therefore overrule Appellant’s two issues, but not on the grounds of
waiver.  Allocution must come before formal sentencing.[6]
 Pronouncing sentence in open court in the defendant’s presence ends the trial.[7] 
The oral pronouncement controls over the written judgment.[8] 
If the trial court gave Appellant no opportunity for allocution before
pronouncing sentence, the trial court could not have cured such error by allowing
allocution after formal sentencing in response to a trial objection.

If
we truly believe that only the legislature can make laws and we truly believe
that the constitutional laws that the legislature makes have meaning, I would
hold the sentence void when no opportunity for allocution is permitted.  Holding
the sentence void would mean that no sentencing would have occurred, and on
remand, the trial could proceed properly to its completion.  Otherwise, we
would be obligated to overrule the legislative mandate that trial courts comply
with article 42.07 and either hold that statute meaningless or hold that
compliance with the statute is optional.

For
these reasons, I concur only in the majority’s overruling Appellant’s two
issues.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

 

PUBLISH

DELIVERED:  October 20, 2011









[1]Appellant filed a motion
for new trial and a motion in arrest of judgment, claiming that the sentence
was contrary to the law and evidence.  The trial court granted a hearing,
during which Appellant failed to raise the issue he now argues, and the trial
court denied both motions.





[2]Tex. Code Crim. Proc. Ann.
art. 42.07 (West 2006).





[3]Laboriel-Guity v. State,
336 S.W.3d 754, 757–59 (Tex. App.—Fort Worth 2011, pet. ref’d) (Dauphinot, J.,
concurring) (citations omitted).





[4]Tex. Const. art. I, § 10
(emphasis added).





[5]See, e.g., Ex
parte Bohannan, No. AP-76363, 2011 WL 1775727, at *1 n.1 (Tex. Crim. App.
May 11, 2011) (emphasis added).





[6]See Tex. Code Crim.
Proc. Ann. art. 42.07.





[7]See id. art. 42.01
(West Supp. 2011); Ex parte Madding, 70 S.W.3d 131, 135 (Tex. Crim. App.
2002).





[8]Madding, 70 S.W.3d
at 135.